IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JAMES NATHANIEL BRASWELL,

          Plaintiff,

v.                                    CIVIL ACTION NO.  2:20-cv-00872

BETSY JIVIDEN, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Amended Complaint* (Document 30), the *Defendants' Motion to Dismiss Amended Complaint* (Document 31), the *Memorandum of Law in Support of Defendants' Motion to Dismiss* (Document 32), and the *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Amended Complaint* (Document 40). For the reasons stated herein, the Court finds that Defendants Betsy Jividen and Craig Robert's motion to dismiss should be denied, and the Plaintiff should be granted leave to amend his complaint for the limited purpose of removing references to suing the Defendants in their official capacities.

**FACTUAL ALLEGATIONS**

The Plaintiff, James Braswell, brings this action pursuant to 42 U.S.C. §1983 alleging violations of his rights guaranteed by the Eighth Amendment to the United States Constitution. At all relevant times, Mr. Braswell was an inmate at South Central Regional Jail, in Charleston, West Virginia. He initially filed a pro se complaint, and then retained counsel who filed the *Amended Complaint* which is now the operative document. Mr. Braswell alleges that Defendants Jividen and Roberts failed to supervise in violation of the Eighth Amendment. To support the

claim with respect to Defendants Jividen and Roberts, the Plaintiff makes the following allegations:

Defendant Betsey Jividen was, at all times relevant, the Commissioner for the West Virginia Department of Corrections & Rehabilitation. Defendant Craig Roberts, at all times relevant, was the Superintendent of South Central Regional Jail, where the underlying incident occurred. Both are supervisory positions responsible for, among other things, the constitutional treatment of inmates.

Defendant Arthur Muncy, who is not a party to the motion to dismiss, was at all relevant times a correctional officer at the South Central Regional Jail. He had a known history of abusive behavior toward inmates and routine violations of rules related to excessive force and appropriate treatment of inmates. Numerous grievances had been filed by inmates against Mr. Muncy alleging abusive behavior that had, at times, become physical and caused serious harm to inmates. Additionally, Mr. Muncy was the subject of a previous lawsuit by a former inmate, Joshua Young, who alleged a violent assault in the jail, that resulted in permanent physical injury.[1] Mr. Muncy's superiors, up to and including Ms. Jividen, had either been named Defendants in Mr. Young's litigation or were on notice of Mr. Muncy's history.[2] These actions, together with actions against other inmates, "exhibited a pattern and practice of excessive force that was known by [Mr. Muncy's] supervisors up to and including…Jividen." (Am. Compl. at ¶ 22). Despite direct or indirect knowledge, both Ms. Jividen and Mr. Roberts "turned a blind eye" and "knowingly

---

1 The litigation was ongoing at the time of the incident with Mr. Braswell and was ultimately dismissed on March 16, 2021.
2 Defendant Jividen was a named defendant to the first suit which was dismissed without prejudice by stipulation but was not included in the second suit.

permitted Defendant Muncy to remain in close contact with inmates." (Am. Compl. at ¶ 24). This continued up to the incident with Mr. Braswell.

On or around December 26, 2018, Mr. Braswell was booked into South Central Regional Jail as a pre-trial detainee. He became ill, was vomiting and having difficulty controlling his bowels. Mr. Muncy, a guard at the jail, failed to get medical treatment for Mr. Braswell or even give him access to a toilet overnight. After ignoring repeated requests from Mr. Braswell and other inmates, Mr. Muncy agreed to move him. Rather than take him to receive medical attention, he threatened Mr. Braswell and moved him to another crowded pod without access to a toilet.

Once there, Mr. Braswell, in an area surveilled by cameras, continued to be sick on his sleeping mat. After some time, Mr. Muncy entered the pod, climbed the stairs, spoke with two inmates through their cell door before leaving. Minutes later, the same cell door Mr. Muncy had approached opened, the two inmates he had talked to came out and descended the stairs. The two inmates, at the direction of Mr. Muncy or with his tacit approval, beat Mr. Braswell and caused serious injuries. From the assault, Mr. Braswell's orbital bones, maxilla, and jaw were broken. His sternum was crushed, his stomach had been ruptured, and his spleen was lacerated to the point it needed to be surgically removed. He also sustained multiple fractures to his skull and ribs.

The Plaintiff alleges that Defendants Jividen and Roberts violated his Eighth Amendment rights to appropriate medical care, and to be free from assault by failing to supervise, train, investigate, and discipline Officer Muncy.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or

pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Accepting the alleged facts as true and construing all reasonable inferences in favor of the Plaintiff, the Court finds that the Plaintiff has properly stated a claim and pled sufficient facts to survive a motion to dismiss. The Defendants raise two primary arguments in support of their motion to dismiss. First, they argue that in being sued in their official capacities, they are improper defendants under 42 U.S.C. §1983. Second, they argue that even if they were proper defendants, the Plaintiff has failed to allege sufficient facts to state a claim upon which relief can be granted. As detailed herein, neither argument is legally persuasive.

### A. Defendants Sued in "Official Capacity"

In the original pro se complaint (Document 1), the Plaintiff named Defendants Roberts and Jividen in their individual capacity. In the now operative *Amended Complaint* (Document 31), however, Plaintiff's counsel listed them in their "official capacit[ies]," while raising similar factual allegations. All parties agree that under 42 U.S.C. §1983, a suit against the Defendants in their official capacities is impermissible. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). A state official sued in her official capacity is not a "person" for purposes of a §1983 claim. *Id; see also, Smoot v. Green,* 2013 U.S. Dist. LEXIS 156887 (S.D.W.Va. Nov. 1, 2013).

The Defendants assert that this addition of the words "official capacity" should be fatal to the Plaintiff's case. They argue that as state officials in their official capacities, they are not subject to the lawsuit, and it should be dismissed. The Plaintiff responds that the inclusion of the term "official capacity" is what essentially amounts to a "scrivener's error committed by his attorneys" and as such the Court should either strike its reference from the record, or grant leave to the Plaintiff to amend the complaint to remove the language.[3] He further argues that both Defendants have been aware of this action and the events giving rise to it from the initiation of the litigation, and thus neither would be prejudiced by this amendment. He asserts that there is no bad faith in the request, that the amendment would not be futile, and the amendment would reflect the Plaintiff's clear intent. Considering the liberal standard of Rule 15(a) for granting leave to amend, he argues allowing this amendment would serve the interests of justice.

---

[3] The Plaintiff has not filed a separate motion to amend the complaint as preferred by the Court. However, in the interest of judicial efficiency and in an effort to move the litigation forward, the Court construes the request as a motion and addresses it as such.

Federal Rule of Civil Procedure 15(a) is a permissive rule that has been liberally construed such that leave to amend should be granted absent a compelling reason to reject it. Courts have a "mandate" under this rule to freely grant leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Fourth Circuit has held, the Court should grant leave to amend a pleading under Rule 15(a)(2) unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).

None of these concerns are present here. There is no allegation that there is any bad faith in the request for leave to amend, and given the impact the amendment would have on the viability of the complaint, it clearly is not futile. Further, the Defendants are not prejudiced by the amendment because they have been parties in the suit since its initial filing and were originally sued in their individual capacities. Moreover, the underlying factual allegations have remained substantially the same, no new legal theory is presented, and the litigation is in its early stages. Dismissing the complaint based on a technical error by Plaintiff's counsel would result in a harsh sanction that cuts against the interests of justice. Thus, given the preference in the law for resolving matters on the merits and the liberal standard or Rule 15(a), the Plaintiff should be granted leave to amend the complaint for the limited purpose of rectifying references to official capacity and other relevant language.

B. *Failure to Allege Sufficient Facts*

The Defendants also generally assert that the Plaintiff has failed to allege any direct acts on the part of the Defendants or any personal action in the deprivation of the Plaintiff's rights. They argue that there is no *respondeat superior* liability pursuant to 42 U.S.C § 1983. Thus, they

imply that the Plaintiff has failed to properly state a claim and the complaint should be dismissed. The Plaintiff responds that the Defendants misconstrued his allegations and that he has pled sufficient facts to survive the motion. He argues that dismissal at this stage would be improper, particularly considering the distinct disadvantage prisoners face in the pleading stage due to their limited access to information. Notwithstanding these disadvantages, the Plaintiff argues that he has alleged sufficient facts against the Defendants which, if proven, would entitle him to relief.

Despite the Defendants' argument that he has failed to allege "any direct acts" and that the complaint essentially amounts to a claim of *respondeat superior* liability, the Plaintiff has, in fact, alleged specific acts or acts of omission against both Defendants. Mr. Braswell alleges, based on prior grievances and lawsuits that both Defendants were aware of Mr. Muncy's pattern of abuse and violation of rules, and yet neither removed him from his position. He points not just to generalized assertions that Mr. Muncy had this history but lists a specific example that occurred less than a year before the incident with Mr. Braswell. Further, he alleges that both Defendant Jividen and Roberts had a responsibility to step in, supervise and put a stop to the behavior based on their job descriptions. By failing to act, Mr. Braswell alleges, the Defendants allowed Mr. Muncy to be able to interact with Mr. Braswell, which led to the alleged infraction. These are short, plain statements that describe a chain of events, which, if proven, could entitle the Plaintiff to relief.

While *respondeat superior* liability is impermissible under §1983, the Fourth Circuit has made clear that a different theory underlies supervisory liability in §1983 claims. In *Slakan*, the court reasoned that supervisory liability under §1983 rests on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the

8

constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984). The Fourth Circuit has articulated the three elements to establish supervisory liability under §1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

Mr. Braswell alleges specific facts to assert that both Defendants would have had "actual or constructive knowledge" of Mr. Muncy's conduct that posed "a pervasive and unreasonable risk of constitutional injury" to individuals like Mr. Braswell. The *Amended Complaint* alleges that Mr. Muncy's history of abusive behavior was well known, and that he had previously been sued for alleged assault. It further alleges that both supervisors would have either actual or constructive knowledge because they were either named defendants to a lawsuit, were aware of lawsuits, or were generally aware of his prior improper behavior. Clearly, the Plaintiff alleges a "pattern and practice" of excessive force by Muncy that was known by his supervisors.

Further, while Mr. Braswell does not allege an affirmative act in response to that knowledge, he alleges a clear act of omission by both Defendants that could establish "deliberate indifference to or tacit authorization of" Mr. Muncy's behavior toward inmates. Assuming actual knowledge of Mr. Muncy's behavior, the Plaintiff has alleged that both Defendants took no steps to either reprimand Mr. Muncy, remove him from his post, or impose any level of discipline. Not acting on those complaints or addressing Mr. Muncy's "pattern or practice" of abuse, if it is as

9

alleged, could constitute deliberate indifference or tacit approval. Mr. Braswell specifically alleges constitutional failures from each Defendant, asserting that Ms. Jividen "by her conduct effectively established a pattern, practice and custom that accommodated, if not promoted" Mr. Muncy's conduct, and Mr. Roberts "by his conduct, knowing[ly] acquiesced and permitted if not promoted" Mr. Muncy's conduct.

Last, if the Defendants had that knowledge of Mr. Muncy's proclivities, could have removed Mr. Muncy from interacting with inmates, and chose not to, Mr. Braswell has certainly pled an "affirmative causal link" between the failure to act, and the injury he received. Within the *Amended Complaint*, Mr. Braswell alleges that Mr. Muncy followed his well-established pattern or practice and through direct instruction, or deliberate indifference, caused Mr. Braswell's injuries. Therefore, accepting the allegations as true, Mr. Muncy's continued interaction with inmates, permitted, acquiesced in and/or promoted by the defendants, represents a direct causal link to the injury he sustained.

Having reviewed the requisite elements of the claim, while accepting the alleged facts to be true, and construing all reasonable inferences in the Plaintiff's favor, Mr. Braswell has met the required pleading standard. The Defendants' motion should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion to Dismiss Amended Complaint* (Document 31) be **DENIED**. The Court further **ORDERS** that the Plaintiff's request for leave to amend the complaint be **GRANTED** for the limited purpose of removing the references to official capacity and other terms in accordance

with this opinion.  The Court **ORDERS** that the Plaintiff file his Second Amended Complaint within five (5) days after entry of this order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

                      ENTER:      December 13, 2021

                      IRENE C. BERGER
                      UNITED STATES DISTRICT JUDGE
                      SOUTHERN DISTRICT OF WEST VIRGINIA