**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

JAMES NATHANIEL BRASWELL,

               Plaintiff,

v.                                       CIVIL ACTION NO.  2:20-cv-00872

BETSEY JIVIDEN, et al.,

               Defendants.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed the *Third Amended Complaint* (Document 55), *Defendants Betsy Jividen, Craig Roberts, Christopher Martin, and Austin Johnson's Motion for Summary Judgment* (Document 65), the accompanying *Memorandum of Law in Support* (Document 66), *Plaintiff's Response to Defendants Motion for Summary Judgment* (Document 70) and *Defendants Betsy Jividen, Craig Roberts, Christopher Martin, and Austin Johnson's Reply in Support of Motion for Summary Judgment* (Document 74), together with all exhibits.

For the reasons stated herein, the Court finds that the motion for summary judgment should be granted in part and denied in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This action was initiated with a *pro se Complaint* (Document 1) on December 28, 2020. The *Complaint* listed "Sgt. X Muncie," Craig Roberts, Betsy Jividen, and the South Central

---

[1] The parties dispute the significance and occurrence of several portions of the facts.  To the extent that any factual dispute exists, the Court views the dispute in the light most favorable to the non-moving party.

Regional Jail.  After obtaining counsel, Plaintiff moved on August 17, 2021, to amend his pro se complaint.  The Court granted leave to amend on September 2, 2021.  The *Amended Complaint* named Betsy Jividen, Craig Roberts, Arthur Muncy, and John Doe Correctional Officer as Defendants.  In response to *Defendants' Motion to Dismiss Amended Complaint,* the Plaintiff requested leave to amend, which was granted.  The Defendants named in the *Second Amended Complaint* were the same as those named in the *Amended Complaint*.

The Court granted another motion to amend to add additional factual allegations and additional defendants based on discovery.  The *Third Amended Complaint*, the governing complaint, names Betsy Jividen, Craig Roberts, Arthur Muncy, Christopher Martin, Austin Johnson, Alexander Crum, and John Doe as defendants.  After the filing of a joint stipulation by the parties, the Court dismissed Defendant Alexander Crum.  Thus, only Plaintiff Braswell's claims against Defendants Betsy Jividen, Craig Roberts, Arthur Muncy, Christopher Martin, Austin Johnson, and John Doe remain pending.

The case arises from the Plaintiff's allegations regarding an incident which took place over a 24-hour period following the evening of January 1, 2019.  Late in that evening, the Plaintiff was incarcerated at the South Central Regional Jail, located in Charleston, West Virginia.  The prison cells in pod C5[2] were full and Mr. Braswell was sleeping on the floor of the day room.  (Pl. Depo at 21::10–18.) (Document 70-4.)  Sometime in the hours between late evening of January 1, 2019, and the morning of January 2, 2019, the Plaintiff began to feel ill, experiencing what he calls "sulfur burps." (Pl.  Depo, at 21::21–24.)

---

[2] The Plaintiff occasionally states that he was in pod C8, rather than C5. However, jail records indicate that he was in pod C5, and he seems to admit as much in his deposition.  (Pl. Dep. at 17::11–21.)  Regardless of which pod it was, it is not dispositive on this action.

By the morning, he was vomiting and suffering from diarrhea.  The Plaintiff had made repeated requests to those around him to use their restrooms, but those requests were denied.  As Mr. Braswell's condition worsened, he began to lose control of his bowels, forcing him to defecate and vomit into the communal shower drain.  Eventually, the Plaintiff's pleading resulted in his pod-mates requesting that he be removed to receive medical attention.  At approximately 6:45 AM, the Plaintiff states that he was under the impression that he was being taken to medical, but instead was moved to pod B6.  (Pl.  Depo at 21::20-22.)  During this transfer, the Plaintiff again requested that he receive medical attention.

At pod B6, the Plaintiff was housed in the day room, rather than a cell.  This situation meant that Mr. Braswell did not have access to a toilet or sink unless someone in the pod allowed him to use their cell's toilet and sink. Once in pod B6, the Plaintiff can be seen repeatedly pressing a button in the pod, which he believed allowed him to communicate his condition to someone in "Control" or "the Tower." (Sur. Vid. at 7:40:58.288 a.m. – 7:56:03.562 a.m.) (Document 67.) However, despite Mr. Braswell's requests, he was not removed from pod B6.  Around this time, Plaintiff states that he was vomiting and defecating on himself and the area around him.  (Pl.  Depo at 26::17–21.)

At approximately 7:00 a.m., correctional officer (C.O.) Johnson was assigned the task of "pod rover." (Def. Ex. B at 1–2) (Document 65-2.)  Around 8:00 a.m., C.O. Johnson can be seen entering and exiting pod B6.  (Sur. Vid. at 8:02:58.639 a.m. – 8:02:51.226 a.m.)  At this same time, Mr. Braswell extends his arm out to C.O. Johnson, and the two men have a brief conversation before C.O. Johnson walks away.  At around this same time, an inmate emerges from cell five, and a brief conversation occurs between C.O. Johnson and this inmate.  (Sur. Vid. at 8:03.21.717

a.m. – 8:03:52.089 a.m.)  C.O. Johnson then goes to the upper level of B6, where he appears to be talking to inmate(s) in and near cell five, while also gesturing to the lower level where Mr. Braswell was lying.  (Sur. Vid. at 8:03.58.914 a.m. – 8:04:43.657 a.m.)

When C.O. Johnson returns a few minutes later, Mr. Braswell stands and attempts to get medical aid.  (Sur. Vid. at 8:11:00.756 a.m. – 8:11:11.225 a.m.)  However, it appears that Mr. Braswell was rebuffed and told to return to his mat, which he did.  *Id.*  When C.O. Johnson again enters, Mr. Braswell raises his head to get C.O. Johnson's attention, but this attempt also fails.  (Sur. Vid. at 8:11:52.442 a.m. – 8:12:07.181 a.m.)

On the upper level of B6, C.O. Johnson can be seen standing and talking with Inmate Kuhn.  (Sur. Vid. at 8:12:45.655 a.m.)  At about this time, Inmate McGee emerges from cell five, and is escorted by C.O. Johnson down the stairs and out of the pod, walking past Mr. Braswell.  (Sur. Vid. at 8:12:47.056 a.m. – 8:13:21.939 a.m.)  Inmate McGee and Mr. Johnson then reenter the pod, where C.O. Johnson walks Inmate McGee back to cell five.  (Sur. Vid. at 8:13:39.676 a.m. – 8:13:57.525 a.m.)  C.O. Johnson can be seen escorting several inmates between their cell doors and the entryway to the pod for "pill pass." (Sur. Vid. at 8:14:12.980 a.m. – 8:16:48.473 a.m.; Pl Depo pg. 23::13-23.)  During this time, he walks past the Plaintiff on at least three more occasions.

At around the same time C.O. Johnson exits the pod, Inmate McGee leaves his cell, walks down the stairs to the day room of B6, and begins to attack Mr. Braswell.  (Sur. Vid. at 8:17:44.519 a.m. – 8:18:18.752 a.m.)  This attack attracts the interest of other inmates, and Inmate Kuhn also begins to beat Mr. Braswell.  (Sur. Vid. at 8:18:18.752 a.m. – 8:18:21.972 a.m.)  After the attack, other inmates can be seen instructing Mr. Braswell to begin mopping up his feces and vomit.  Mr.

Braswell states that prior to the beating he had no interaction or prior history with inmates Carl McGee or Joshua Kuhn.  (Pl.  Depo at 26::2-13.)

Over the next few minutes Mr. Braswell attempts to mop the floor while also trying to get the attention of C.O. Johnson.  When C.O. Johnson returns to B6, he instructs Mr. Braswell to grab his sleeping pad, and exit the pod, which he does.  Due to the beating, Mr. Braswell suffered from extensive injuries, which included a fractured orbital socket, broken nose, knocked-out teeth, a concussion, and a ruptured spleen.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c); *see also Hunt v.  Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 322 (1986); *Anderson v.  Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co.  v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v.  Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.  When determining whether summary judgment is appropriate, a court must

view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element … necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants have presented arguments as to each named Defendant, and the Court will likewise address the claims as to each Defendant.

A.  *Defendants Muncy & Martin*

Defendant C.O. Arthur Muncy argues that he was not present at South Central Regional Jail on the day Mr. Braswell was attacked, and the Plaintiff does not dispute this argument. (Def. Br. at 3) (Document 66.)  Because Mr. Braswell's claims against C.O. Muncy are predicated on C.O. Muncy's presence at the jail on January 2, 2022, there is no genuine dispute that he could be liable for any of the Plaintiff's claims.  (Def. Br. at 3.) (Pl. Resp. at 9) (Document 70.)  Accordingly, without objection, summary judgment should be granted as to Defendant C.O. Muncy.

Defendant C.O. Martin argues that he should be dismissed because he lacked the requisite mental state to be liable for any of the Plaintiff's claims.  (Def. Br. at 9.)  The jail logs show that C.O. Martin moved the Plaintiff to pod B6 at 6:45 a.m., and was then relieved by C.O. Johnson. (Def. Ex. B.)  The Plaintiff now states that he has no recollection of a conversation with C.O. Martin, only C.O. Johnson.  (Pl. Ex. 7, ¶ 5.)  For these reasons, the Plaintiff does not dispute that C.O. Martin should be dismissed.  (Pl. Resp. at 13 & 16.)  Accordingly, without objection, summary judgment should be granted as to Defendant C.O. Martin.

B.  *Defendants Jividen & Roberts*

Defendants Jividen & Roberts argue that summary judgment is appropriate because the Plaintiff has failed to elicit or produce evidence of actual or constructive knowledge that subordinates were engaged in conduct that posed a risk of constitutional injury.  (Def. Br. at 6.) The Plaintiff concedes that he has not elicited such evidence and that Defendants Jividen and Roberts should be dismissed unless discovery is reopened.  (Pl. Resp. at 11.)  In his Response, the Plaintiff requests summary judgment be deferred, and that the discovery period be reopened for

the limited purpose of conducting discovery to obtain the necessary evidence to preserve their claim. *Id.*

At this stage of the proceedings, the proper vehicle for requesting the additional time for discovery is Rule 56(d) of the Federal Rules of Civil Procedure. This request is to act as a safeguard against "improvident or premature" summary judgment. *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (citing 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2740)); *see also Prickett v. Duke Power Co.*, 49 F.R.D. 116, 117 (D.S.C. 1970), aff'd sub nom. The request for deferral and to reopen discovery requires the non-movant to "present an affidavit putting forth 'the reasons why he is unable to present the necessary opposing material.'" *Pine Ridge Coal Co. v. Loc. 8377, United Mine Workers of Am.*, 187 F.3d 415, 421 (4th Cir. 1999) (citing 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2740, at 399 (1998)).

Even if the non-movant fails to file the affidavit, if the non-movant sets forth valid justification for deferral in its brief opposing summary judgment, then deferral may be appropriate. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002) (deferral was appropriate despite a lack of affidavit because plaintiff convincingly argued bad faith "uniquely in the possession of the defendants" in its brief). At the very least, the non-movant must show "diligence and good faith." 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 4th § 2740. However, deferral will generally be inappropriate "when the party seeking the delay has failed to take advantage of discovery." 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 4th § 2741; *see also Morrissey v. William Morrow & Co., Inc.*, 739 F.2d 962,

966 (4th Cir. 1984); *In re: Monitronics Intl., Inc., Tel. Consumer Protec. Act Litig.*, 223 F. Supp. 3d 514, 529 (N.D.W. Va. 2016), aff'd sub nom.

The Plaintiff offers no affidavit to explain why summary judgment should be deferred or cause for discovery to be reopened. Rather, the Plaintiff asks for an extension of time simply to avoid summary judgment. Here, the grounds for deferral cannot be satisfied with silence. It leaves the Court to infer diligence of the Plaintiff or bad faith of the Defendant, which the Court is unwilling to do. Additionally, discovery was open in this case for eight months, and the Plaintiff had discovery tools that could have aided the development of his claims against Defendant Jividen and Roberts that he failed to utilize. Because good cause has not been shown, the Plaintiff's informal request for deferral and to reopen discovery must be denied. Accordingly, summary judgment for claims against Defendants Jividen and Roberts is appropriate.

### C. *Defendant John Doe (C.O. Stout)*

The Plaintiff also names "John Doe" in the Control Tower as a party in his *Third Amended Complaint*, who the Plaintiff now maintains is C.O. Stout. Plaintiff states that C.O. Stout's "full identity and proper address should be disclosed . . . so that he can be properly served." (Pl. Resp. at 10.) This request sounds also as a motion to defer summary judgment and reopen.[3] However, the Plaintiff has failed to provide adequate grounds to defer ruling and reopen discovery.

As with Defendants Jividen and Roberts, the Plaintiff did not file an affidavit setting forth valid reasons for deferral. Turning to the substance of the Plaintiff's brief in opposition, no satisfactory reason for deferral is argued. The Plaintiff was provided multiple productions of discovery, many of which occurred prior to his motion to amend the *Second Amended Complaint*.

---

[3] The standard for reopening discovery is more fully set forth in Part III.B.

Even after the Plaintiff filed his *Third Amended Complaint*, he did not mention C.O. Stout until the issue was forced, nearly five months later, by the Defendants.  The Plaintiff does not state that information implicating C.O. Stout or revealing his identity was hidden, or that he had inadequate time to discover or compel it, if necessary.[4]  The failure to set forth valid reasons for deferral is emblematic of a lack of diligence, and therefore fails to satisfy the standard of Rule 56(d) of the Federal Rules of Civil Procedure.  The motion for summary judgment as to John Doe must therefore be granted.

### D.  Defendant Johnson

Defendant C.O. Johnson is the focus of most of the Plaintiff's remaining claims, and he is named in Counts I, II, IV, and V.  Defendant C.O. Johnson has moved and argued for summary judgment as to each claim.

### (1) Count I: Deliberate Indifference to Plaintiff's Serious Illness

Count I of the Plaintiff's Complaint sounds in a violation to his Eighth Amendment rights as an inmate, specifically the failure to provide medical care.  (Complaint ¶ 64) (Document 55.) A prima facie case under the Eighth Amendment requires a showing that (1) "a serious deprivation of a human need" has occurred, and (2) this deprivation occurred because of the "deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (citing *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991)).

The "objective" first prong requires that the deprivation of a basic human need was "sufficiently serious." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (citing *Wilson v.*

---

[4] Although the Court does not have the benefit of knowing exactly what was provided in each discovery production, it is a comfortable assumption that the sole document cited as implicating C.O. Stout, labeled by the Plaintiff as "Security Personnel Assignments Night Shift," (Pl. Ex. 6) was likely provided in Defendants' production of *Personnel Security Assignments* on September 27, 2021.

*Seiter,* 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)). A medical condition is deemed sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention." *Taylor v. Patron,* No. 3:18-cv-183, 2019 U.S. Dist. LEXIS 126823, at *9 (N.D. W. Va. June 27, 2019) (citing *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991)). Here, the Defendants do not dispute the Plaintiff's assertion that his medical condition and failure to receive health care was sufficiently serious. (Def. Br. at 9; Def. Reply at 5.) Rather, the Defendants dispute whether they/C.O. Johnson had the subjective deliberate indifference required by *Strickler's* second prong. *Id.*

In the context of medical needs, deliberate indifference can manifest in at least three contexts: (1) by "prison doctors in their response to the prisoner's needs, (2) by "prison guards in intentionally denying or delaying access to medical care," and (3) by prison guards in "intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference lays "somewhere between the poles of negligence at one end and purpose or knowledge at the other," and requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

Defendant C.O. Johnson argues that the Plaintiff has not provided evidence that C.O. Johnson knew of the Plaintiff's dire medical condition. (Def. Br. at 9.) First, Defendant C.O. Johnson states that "Plaintiff himself testified that he never put in any sick call or requests because the illness came on quickly." *Id.* (citing Pl. Depo, at 21::18–24.) However, placing a sick call or medical request is not a necessary step for C.O. Johnson to obtain knowledge of Plaintiff's medical

status.  The Plaintiff has presented evidence of several interactions with C.O. Johnson in pod B6, including a recorded face-to-face interaction between the two parties.  (Sur. Vid. at 8:11:00.756 a.m. – 8:11:11.225 a.m.)  Additionally, a jury could reasonably infer that C.O. Johnson knew of Mr. Braswell's medical condition because it was obvious in nature, and because Mr. Braswell reached out to C.O. Johnson for help.  (Sur. Vid. at 8:02:58.639 a.m. – 8:02:51.226 a.m.)  What is more, C.O. Johnson can be seen gesturing towards Mr. Braswell from the second floor of the pod, which could imply a level of awareness and knowledge of Mr. Braswell's condition.  (Sur. Vid. at 8:03.58.914 a.m. – 8:04:43.657 a.m.)  For these reasons, the Court finds there is a genuine dispute of material fact relative to Defendant's argument that "Plaintiff is unable to present any evidence to show that [C.O. Johnson] was told by Plaintiff or anyone else that Plaintiff needed medical attention".  The Court finds that the Plaintiff has presented sufficient evidence to permit a reasonable jury to find that C.O. Johnson was aware of his need for medical assistance.[5]

Defendants also argue that Mr. Braswell has not pointed to evidence and has merely offered his opinion, and that a mere self-serving opinion or affidavit cannot defeat summary judgment. (Def. Reply at 5.)  Although there may be cases in which a self-serving, uncorroborated statement does not create a genuine issue of material fact—for example, where the statement is contradicted by irrefutable video evidence, or is contrary to a prior sworn statement by the same party—a non-moving party's testimony is evidence and cannot simply be summarily disregarded. No evidentiary rule excludes self-serving testimony.[6]  *See, e.g.*, *Sec. & Exch. Comm'n v. Jacoby*, No. CV CCB-

---

[5] To the extent C.O. Johnson argues that Mr. Braswell's testimony should be discounted because of a lack of clarity or shifts in his testimony, the Court finds that questions of credibility are properly reserved for the factfinder.  Mr. Braswell did not provide directly contradictory statements or otherwise display such a lack of credibility that no reasonable juror could credit his testimony.

[6] Indeed, Courts would disregard a great deal of evidence if self-serving testimony was excluded.

12

17-3230, 2021 WL 351176, at *15 (D. Md. Feb. 2, 2021), *on reconsideration,* No. CV CCB-17-3230, 2021 WL 4478722 (D. Md. Sept. 30, 2021) ("Rule 56 does not contain a corroboration requirement or bar self-serving testimony, and a court may not credit the evidence of the moving party while disregarding the evidence of the nonmoving party.")

The Fourth Circuit has held that "[t]he facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, and this party is entitled to 'have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)). The Fourth Circuit has thoroughly rejected the argument that self-serving testimony from a non-moving party is insufficient to defeat summary judgment. "Indeed, the record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the Plaintiff] himself. It is well settled that we may not, at summary judgment, discount viable, material evidence on the ground that it was offered by a plaintiff with a troubled past." *Mann v. Failey*, 578 F. App'x 267, 273 n. 2 (4th Cir. 2014) (unpublished) (further noting the importance of this rule "in cases with pro se prisoner plaintiffs" who have limited ability to create a record and conduct discovery); *see also Lovett v. Cracker Barrel Old Country Store, Inc*., 700 F. App'x 209, 212 (4th Cir. 2017) (unpublished) (rejecting the argument "that as a matter of law, 'self-serving affidavits of non-movants' that are 'unsupported by objective record evidence' are insufficient to create genuine issues of material fact").

Further, the Plaintiff's deposition and affidavit are corroborated by the objective video evidence, which bolsters an inference that C.O. Johnson knew of his condition. Accordingly, summary judgment of Count I as to C.O. Johnson is inappropriate.

*(2) Deliberate Indifference to Substantial Risk of Serious Harm/Failure to Protect*

The Plaintiff alleges that C.O. Johnson's actions not only violated his right to medical care, but also his right to be protected from a substantial risk of serious harm. Otherwise stated, "corrections officers have a duty to protect prisoners from violence at the hands of other prisoners[,] . . . being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. at 832, 834). Like Count I, this claim has both an objective and subjective element. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014). Again, Defendant does not dispute that the objective prong—a serious significant physical or emotional injury—is found here. (Def. Br. at 11; Def. Reply at 6.)

Rather, Defendant focuses his attention on the second prong, the requirement that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The knowledge of this risk can be inferred from circumstantial evidence. *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016). Defendant Johnson argues that he (1) did not have knowledge of Plaintiff's medical condition, and (2) in the alternative, did not have knowledge that Plaintiff's medical condition put him at risk of an assault. (Def. Br. at 11.)

As discussed above, the Plaintiff has presented sufficient evidence to permit a finding that C.O. Johnson knew about his medical condition. The Defendant argues that if he did know about

14

the Plaintiff's condition, he did not know the medical condition would precipitate an attack. However, this argument is too narrow to cover what the Plaintiff has argued and what can be reasonably inferred.  The Plaintiff has argued that C.O. Johnson not only knew of Mr. Braswell's condition but that he pointed out Mr. Braswell's condition to other inmates and repeatedly stated "he shit in your pod .  .  .  [if] you want him out of here, you get him out of here." (Pl. Ex. 7 at ¶ 6.)  The video of B6 shows C.O. Johnson walking with several inmates, including Inmate McGee, to the pod door.  (Sur. Vid. at 8:13:39.676 a.m. – 8:13:57.525 a.m.)  Just prior to walking with Inmate McGee, C.O. Johnson is seen on video presumably talking to Inmate Kuhn, outside of Inmate McGee's cell.  (Sur. Vid. at 8:12:45.655 a.m.)  Almost immediately after C.O. Johnson is no longer in the pod, Inmate McGee leaves his cell and begins to attack the Plaintiff.  (Sur. Vid. at 8:17:44.519 a.m. – 8:18:18.752 a.m.)

Although the jail's video surveillance did not record audio, the Plaintiff's statements, corroborated by the movements seen in the video, along with the circumstantial weight of the timing of the beating, presents a scenario sufficient to permit a reasonable jury to conclude that C.O. Johnson knew of the risk of the beating.  In fact, as the Plaintiff has styled it, these actions show more than just mere knowledge of the risk, but encouragement of the ultimate result. Accordingly, summary judgment on Count II as to C.O. Johnson is inappropriate.

### (3) Count IV: Assault and Battery

C.O. Johnson argues that Plaintiff's claims for Assault and Battery should be dismissed for two reasons.  First, the Defendants argue that C.O. Johnson never touched or caused an offensive or harmful contact with the Plaintiff.  (Def. Br. at 12.)  Second, the Defendants argue that C.O.

Johnson never *intended* to cause an offensive or harmful contact. (Def. Br. at 12.) The Defendants also argue that C.O. Johnson lacked the intent for assault. (Def. Br. at 12.)

The Defendant's arguments go to the legal elements of a West Virginia battery claim, which require the tortfeasor to "act intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015) (Copenhaver Jr., J.) (quoting Restatement (Second) of Torts § 13 (1965). Assault is similar to battery, but does not require contact, merely the imminent apprehension of the offensive contact. *W. Virginia Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 52, 602 S.E.2d 483, 495 (2004); Restatement (Second) of Torts § 21 (1965).

The Plaintiff concedes that C.O. Johnson never attacked Mr. Braswell, and that the offensive contact was caused by inmate proxies. (Pl. Resp. at 14.) Specifically, the Plaintiff argues that C.O. Johnson's words to Inmates Kuhn and McGee—to the effect of "[He] shit in your pod . . . [i]f you want him out of here, you get him out of here"—amounts to a battery. (Pl. Ex. 7 at ¶ 6.) A battery does not require flesh on flesh contact between the parties, the battery can be indirect. Rest. 2d of Torts § 18 cmt. c (1965). Even offensive contact by a third party to a plaintiff can create liability if the defendant intends the outcome. *See, e.g.*, *Konah v. D.C.*, 815 F. Supp. 2d 61, 80 (D.D.C. 2011) (refusing to unlock a door that resulted in plaintiff being groped and sexually assaulted by inmates can satisfy the "act" requirement of battery). Therefore, in this case, it is of no consequence that C.O. Johnson failed to touch Mr. Braswell.

This leaves only the Defendant's argument that he lacked the intent for a battery. However, "determining intent is fact-intensive, and when the circumstantial evidence of a person's intent is

ambiguous, the question of intent cannot be resolved on summary judgment." *Gen. Analytics Corp. v. CNA Ins. Cos.*, 86 F.3d 51, 54 (4th Cir.1996); *see also Morrison v. Nissan Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Denny v. Seaboard Lacquer, Inc.* (4th Cir. 1973) 487 F.2d 485, 491; *Schmidt v. McKay* (2d Cir. 1977) 555 F.2d 30, 37; *Mutual Fund Investors v. Putnam Management Co.* (9th Cir. 1977) 553 F.2d 620, 624; *Croley v. Matson Navigation Company* (5th Cir. 1970) 434 F.2d 73, 77.

Here, the Plaintiff has provided sufficient evidence that C.O. Johnson had the requisite intent because it can be inferred from the circumstances and actions in the recorded evidence. Mr. Braswell states that prior to the attack, C.O. Johnson threatened him with pepper spray. (Pl. Ex. 7 at ¶ 5.) From this transaction, a factfinder could reasonably infer that the relationship between the two men was not amicable. The negative relationship between C.O. Johnson and Mr. Braswell is further evidenced by C.O. Johnson's refusal to take Mr. Braswell to receive medical attention even after several pleas. (Sur. Vid. at 8:03.58.914 a.m. – 8:11:11.225 a.m.) The Plaintiff also argues that C.O. Johnson knew, given the Plaintiff's condition, that the inmates would have wanted him removed and that being prompted by a correctional officer would stoke Inmates Kuhn and McGee into violence. (Pl. Ex. 7 at ¶¶ 5 & 6.) This is corroborated by the fact that even though Mr. Braswell had no prior history with Inmates Kuhn or McGee, they viciously beat him without provocation by Mr. Braswell. What is more, C.O. Johnson's statement to inmates Kuhn and McGee, should a jury credit Mr. Braswell's testimony, tends to show his intent to cause harm to Mr. Braswell. Taking the evidence in the light most favorable to Mr. Braswell, the combination of the (1) knowledge of C.O. Johnson, (2) position of authority C.O. Johnson had over the inmates, (3) evidence of a strained relationship between the Plaintiff and C.O. Johnson and (4) alleged

statement of C.O. Johnson that "[i]f you want him out of here, you get him out of here," would permit a reasonable jury to find that C.O. Johnson intended his words to result in a beating of Mr. Braswell.

Accordingly, the Defendant's motion for summary judgment on the Assault and Battery claim should be denied. The parties also engage in arguments for the alternative scenario where the Assault and Battery claim is dismissed.[7] However, the Court finds these arguments mooted by its finding.

### (4) Count V: Conspiracy

Defendant C.O. Johnson also moves for summary judgment on Mr. Braswell's claim of civil conspiracy. The Defendant broadly asserts that the Plaintiff has "absolutely no evidence that C.O. Johnson instigated or encouraged inmates McGee or Kuhn to attack him." (Def. Br. at 13.) The Defendant's more detailed arguments draw attention to Mr. Braswell's deposition testimony where he states his memory is "fuzzy" on the conversation that he overheard between C.O. Johnson and Inmates Kuhn and McGee, and that Mr. Braswell has "never identified" the officer he overheard. *Id.*

In his response, the Plaintiff does not offer a specific counterargument to the Defendant's challenges to his civil conspiracy claim. The Defendant has argued that the Plaintiff's failure to offer a pointed response constitutes a concession. (Def. Reply at 2.) However, this cannot be the case. The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Additionally, the burden is on the movant to show there is no genuine dispute of material facts, as opposed to the non-moving party. Fed. R.

---

[7] This includes the Plaintiff's untimely attempt to add a bystander liability and instigation claims. (Pl. Resp. at 14–15.)

Civ. R. 56(a); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Brocious v. United States Steel Corp.*, 429 F. Supp. 3d 82, 86 (D. Md. 2019). It is only after the movant has shown there is no evidence going to a material fact that the burden shifts to the non-moving party to proffer special facts. *Id.* Although the Plaintiff has not responded directly to the Defendant's argument for summary judgment of the civil conspiracy claim, the Plaintiff's responsive brief is otherwise full of citations to concrete evidence and facts. Therefore, the Court will consider the evidence the Plaintiff has otherwise put forth.

The elements of civil conspiracy require "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). Civil conspiracy creates liability for a tort "on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Id* at Syl. pt. 9. "[D]irect proof of such an agreement is rarely available, since conspiracies are by their very nature secretive; thus, the existence of a conspiracy may be inferred through the combination of common sense and circumstantial evidence." *Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 801 S.E.2d 443, 472 (W. Va. 2017) (citing *Xie v. City of Chicago*, No. 14-cv-6082, 2016 WL 6193981, at *10 (N.D. Ill. Oct. 24, 2016)).

Although the Defendant asserts that the conspiracy claim fails because of its lack of direct evidence and because of perceived issues with Mr. Braswell's testimony, a jury after reviewing the evidence, resolving credibility disputes, and drawing all reasonable inferences from the evidence in favor of Mr. Braswell, could conclude that the Defendant entered into, and indeed instigated, an agreement to direct and facilitate an attack on the Plaintiff.

The evidence discussed above in Part III.C.(3) highlights the issues of material fact in this matter, namely, the content of the conversations between C.O. Johnson, Inmate McGee, and Inmate Kuhn.  There is direct evidence that C.O. Johnson was walking and standing with Inmates McGee and Kuhn, in the same time frame that Mr. Braswell's medical needs and lack of access to toilet facilities were negatively impacting the health and comfort of others in the pod.  (Sur. Vid. at 8:13:39.676 a.m. – 8:13:57.525 a.m.)  The Plaintiff's testimony is that he overheard portions of these conversations, including statements that Mr. Braswell was only going to be removed if the inmates removed him.  (Pl. Ex. 7 at ¶ 6.)  Mr. Braswell and inmates Kuhn and McGee had no prior history. Immediately after C.O. Johnson leaves the pod, a beating occurs.  Given the short but negative history between C.O. Johnson and Mr. Braswell[8] and the timing of the events, a reasonable jury could conclude that C.O. Johnson and the inmates arrived at some common scheme or plan that would result in Mr. Braswell being beaten.  Accordingly, summary judgment on the Plaintiff's civil conspiracy claim is inappropriate.

## CONCLUSION

Wherefore, after careful consideration and based on the findings contained herein, the Court does hereby **ORDER** that *Defendants Betsy Jividen, Craig Roberts, Christopher Martin, and Austin Johnson's Motion for Summary Judgment* (Document 65) be **GRANTED IN PART AND DENIED IN PART.**  The Court **ORDERS** that the *Motion* be **GRANTED** as to all claims against Defendants Muncy, Martin, Doe, Jividen, and Roberts, **GRANTED** as to Count III and Count VI, and **DENIED** as to Counts I, II, IV, and V against Defendant Johnson.

---

[8] This is also reviewed and discussed in Part III.C.(3)

The Court further **ORDERS** that both the Plaintiff's requests to defer summary judgment and reopen discovery are **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    October 24, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

21